# Richmond.

## FIELDS v. COMMONWEALTH.

### January 16, 1908.

1. CRIMINAL LAW—*New Trial—Insufficient Evidence—Conduct of Detective.*—The evidence in this case is palpably insufficient to support the verdict of conviction which was found. It consists solely of the testimony of one witness, who admitted his perjury in the case, and of an amateur detective, whose story furnishes internal evidence of the fact that it was a sheer fabrication, and who resorted to methods so flagrantly reprehensible as to bring reproach upon the administration of justice if they were sanctioned.

Error to a judgment of the Circuit Court of Brunswick county.

*Reversed.*

The opinion states the case.

*Turnbull & Smithey* and *Wm. B. Cocke,* for the plaintiff in error.

*Robert Catlett, Assistant to Attorney-General,* and *E. P. Buford,* for the commonwealth.

WHITTLE, J., delivered the opinion of the court.

The accused, Thomas Fields, brings this writ of error to a judgment of the circuit court of Brunswick county, whereby he was convicted of malicious wounding, and sentenced to five years' confinement in the penitentiary.

Though irregularities occurred during the trial which were highly prejudicial to the prisoner, and which were made the grounds of exception, we need only notice the assignment of error involving the ruling of the court with respect to the motion to set aside the verdict of the jury as contrary to the evidence.

The sole testimony tending to implicate the accused with the commission of the crime charged was that of an amateur detective, Reams, who came from an adjoining county to work up the case, and his confederate, Brackett.

The substance of Reams' story is that he suspected the accused of complicity with the offense from his reputation, and that his suspicion likewise attached to Brackett. Consequently he went in the night time to the home of the prisoner, "and hid himself in the front yard. After dark, some one came out of the house to get wood, and spoke a few words to some one in the room." He had never seen the prisoner, but presumed that he was the man who came out of the house, though he admitted that he could not see his face, as his back was toward the light. The following day he approached Brackett and told him that "he had the dead wood on him and Thomas Fields, and that he, Brackett, had better admit their guilt," promising to see that "it would not go hard with him if he did so." Accordingly Brackett confessed that "he and Thomas Fields went by Mattie Massenburg's * * * and Thomas Fields committed the act, and that he tried to pursuade him not to do it; that the prisoner looked in the window, and seeing Arthur Crichton, said he was going to shoot or kill him, and threw a rock at him through the window, and then threw another rock and drew his pistol and shot into the room several times." Reams further testified that he thereupon entered into an arrangement with Brackett that the latter should accompany the accused along a certain road after night-fall and engage him in conversation, so that witness might hear his statements. This conspiracy was carried out shortly thereafter; and, though the night was dark, Reams

asserted that he identified the accused (whom he said he had only seen on the former occasion and under the circumstances mentioned), and heard him admit to Brackett, among other things, that he struck Crichton and intended to kill him. Brackett testified that he was greatly alarmed by Reams' accusation, and, in order to shield himself from what he thought would be certain punishment, told Reams that the accused had committed the offence, but he positively denied being a party to any agreement that he should induce the prisoner to go with him, as alleged, for the purpose of extracting a confession from him, or that any such occurrence ever happened. While the witness did not deny that, on the preliminary trial, before the justice, he might have made the statement attributed to him inculpating the accused (for he was intoxicated and did not remember what he said), he, nevertheless, declared that "it was a lie made from whole cloth."

Reams' own version of the matter shows that it was not possible for him to have identified the accused on the occasion of the alleged confession. He fixed the occurrence on a dark night, in order that he might eavesdrop without being detected, and recklessly swore that under such conditions he could positively identify a man whom he was not certain he had ever seen before; and, if he had, it was in the night time, with a light falling upon him from behind in such manner that he could not discern his features.

It is almost equally as incredible that the accused should have confessed his guilt to Brackett, who, according to the theory of the prosecution, was present when the assault was made, was fully cognizant of all the details attending its commission, and endeavored to prevent it. Of course, no credence can be given to the self-acknowledged perjury of Brackett; and, with the testimony of these two witnesses eliminated, there is absolutely no evidence upon which to rest a verdict. The flimsy tale of

the witness Reams furnishes internal evidence of the fact that it was a sheer fabrication.

Our conclusion is that the evidence is not only palpably insufficient to warrant the verdict, but that the methods resorted to by Reams were, under the circumstances, so flagrantly reprehensible that to sanction them would tend to bring reproach upon the administration of justice.

For these reasons the judgment must be reversed, and the case remanded for further proceedings.

*Reversed.*